UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NASSER AL-AULAQI,<br>   on his own behalf and as Next Friend of<br>      Anwar Al-Aulaqi<br>Al-Zubairi Street<br>Al-Saeed Center<br>Sana'a, Yemen,<br><br>      Plaintiff,<br><br>      v.<br><br>BARACK H. OBAMA,<br>   in his official capacity as President of<br>      the United States<br>1600 Pennsylvania Avenue NW<br>Washington, DC 20500;<br><br>LEON C. PANETTA,<br>   in his official capacity as Director of<br>      the Central Intelligence Agency<br>Central Intelligence Agency<br>Washington, DC 20505;<br><br>ROBERT M. GATES,<br>   in his official capacity as Secretary of Defense<br>1000 Defense Pentagon<br>Washington, DC 20301-1010,<br><br>      Defendants. | No. 10-cv-_____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**
**(Violation of constitutional rights and international law – targeted killing)**

**INTRODUCTION**

1.    This case concerns the executive's asserted authority to carry out "targeted killings" of U.S. citizens suspected of terrorism far from any field of armed conflict. According to numerous published reports, the government maintains lists of suspects— "kill lists"—against whom lethal force can be used without charge, trial, or conviction.

Individuals, including U.S. citizens, are added to the lists based on executive determinations that secret criteria have been satisfied. Executive officials are thus invested with sweeping authority to impose extrajudicial death sentences in violation of the Constitution and international law.

2.      The right to life is the most fundamental of all rights. Outside the context of armed conflict, the intentional use of lethal force without prior judicial process is an abridgement of this right except in the narrowest and most extraordinary circumstances.

3.      The United States is not at war with Yemen, or within it. Nonetheless, U.S. government officials have disclosed the government's intention to carry out the targeted killing of U.S. citizen Anwar Al-Aulaqi, who is in hiding there. In early 2010, several newspapers reported that U.S. government officials had confirmed Anwar Al-Aulaqi's placement on government kill lists; these lists amount to standing authorizations to use lethal force. Numerous subsequent reports have corroborated those accounts. According to one media report, there have already been as many as a dozen unsuccessful attempts on Anwar Al-Aulaqi's life. Anwar Al-Aulaqi has been in hiding since at least January 2010. Plaintiff Nasser Al-Aulaqi is Anwar Al-Aulaqi's father; he brings this action on his own behalf and as next friend to his son.

4.      Outside of armed conflict, both the Constitution and international law prohibit targeted killing except as a last resort to protect against concrete, specific, and imminent threats of death or serious physical injury. The summary use of force is lawful in these narrow circumstances only because the imminence of the threat makes judicial process infeasible. A targeted killing policy under which individuals are added to kill

lists after a bureaucratic process and remain on these lists for months at a time plainly goes beyond the use of lethal force as a last resort to address imminent threats, and accordingly goes beyond what the Constitution and international law permit.

5. The government's refusal to disclose the standard by which it determines to target U.S. citizens for death independently violates the Constitution: U.S. citizens have a right to know what conduct may subject them to execution at the hands of their own government. Due process requires, at a minimum, that citizens be put on notice of what may cause them to be put to death by the state.

6. Plaintiff seeks a declaration from this Court that the Constitution and international law prohibit the government from carrying out targeted killings outside of armed conflict except as a last resort to protect against concrete, specific, and imminent threats of death or serious physical injury; and an injunction prohibiting the targeted killing of U.S. citizen Anwar Al-Aulaqi outside this narrow context. Plaintiff also seeks an injunction requiring the government to disclose the standards under which it determines whether U.S. citizens can be targeted for death.

## JURISDICTION AND VENUE

7. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) over causes of action arising under the Fourth and Fifth Amendments to the U.S. Constitution, and 28 U.S.C. § 1350 (Alien Tort Statute) over a cause of action arising under customary international law and treaty law. Jurisdiction is also proper pursuant to 5 U.S.C. § 702 *et seq*. (Administrative Procedure Act) and 28 U.S.C. § 2201 *et seq*. (Declaratory Judgment Act).

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## PARTIES

9. Plaintiff Nasser Al-Aulaqi is the father of Anwar Al-Aulaqi, a U.S. citizen whose targeted killing Defendants have authorized. Nasser Al-Aulaqi is a citizen and resident of Yemen. He acts on his own behalf and as next friend to his son. He acts in the latter capacity because his son is in hiding under threat of death and cannot access counsel or the courts to assert his constitutional rights without disclosing his whereabouts and exposing himself to possible attack by Defendants. He brings the Alien Tort Statute claim on his own behalf to prevent the injury he would suffer if Defendants were to kill his son.

10. Defendant Barack H. Obama is President of the United States. As President, he is Commander-in-Chief of the U.S. armed forces and serves as Chair of the National Security Council, which authorizes the targeted killing of suspected terrorists who are U.S. citizens. President Obama is sued in his official capacity.

11. Defendant Leon C. Panetta is the Director of the Central Intelligence Agency ("CIA"). As CIA Director, he has ultimate authority over the CIA's operations worldwide. Upon information and belief, Defendant Panetta approves the addition of individuals to the kill list maintained by the CIA, and signs off on individual targeted killing operations conducted by the CIA outside of armed conflict, including those against U.S. citizens. Director Panetta is sued in his official capacity.

12. Defendant Robert M. Gates is the Secretary of Defense. As Defense Secretary, he has ultimate authority over the U.S. armed forces worldwide, including the

Joint Special Operations Command ("JSOC"). Upon information and belief, JSOC is involved in carrying out targeted killings, including of U.S. citizens outside of armed conflict. In his capacity as Secretary of Defense, Defendant Gates is also a statutory member of the National Security Council, which authorizes the targeted killing of U.S. citizens. Secretary Gates is sued in his official capacity.

## FACTUAL ALLEGATIONS

<u>Targeted Killings by the United States Outside of Armed Conflict</u>

13. Since 2001, the United States has carried out targeted killings in connection with the "war on terror." While many of these killings have been conducted by the U.S. military in the context of the armed conflicts in Afghanistan and Iraq, the United States has also carried out targeted killings outside the context of armed conflict, and it is these killings that are at issue here. Upon information and belief, both the CIA and JSOC are involved in authorizing, planning, and carrying out targeted killings, including of U.S. citizens, outside the context of armed conflict.

14. The first reported post-2001 targeted killing by the U.S. government outside Afghanistan occurred in Yemen in November 2002, when a CIA-operated Predator drone fired a missile at a suspected terrorist traveling in a car with other passengers. The strike killed all passengers in the vehicle, including a U.S. citizen. The United Nations Special Rapporteur on Extrajudicial Killings later stated that the strike constituted "a clear case of extrajudicial killing" and set an "alarming precedent." Since 2001, there has been an increase in targeted killings by the United States against terrorism suspects outside of Afghanistan and Iraq.

15. The government has publicly claimed the authority to carry out targeted killings of civilians, including U.S. citizens, outside the context of armed conflict. For example, in February 2010, then-Director of National Intelligence Dennis Blair, in response to a question by a member of Congress about the targeted killing of U.S. citizens, stated that the United States takes "direct action" against suspected terrorists and that "if we think that direct action will involve killing an American, we get specific permission to do that." In June 2010, Deputy National Security Advisor John Brennan responded to questions about the targeted killing program by stating, "If an American person or citizen is in Yemen or in Pakistan or in Somalia or another place, and they are trying to carry out attacks against U.S. interests, they will also face the full brunt of a U.S. response."

16. Although the government has publicly claimed the authority to carry out targeted killings of civilians outside the context of armed conflict, it has not explained on what basis individuals are added to kill lists, or the circumstances in which the asserted authority to carry out targeted killings will actually be exercised.

<u>Specific Authorization to Kill Plaintiff's Son Anwar Al-Aulaqi</u>

17. Plaintiff Nasser Al-Aulaqi moved to the United States in 1966 to pursue his studies as a Fulbright scholar at New Mexico State University. Plaintiff's son, Anwar Al-Aulaqi, was born in New Mexico in 1971. Plaintiff remained in the United States with his family for the next seven years, until 1978, when they moved back to Yemen. Plaintiff went on to serve as Minister of Agriculture and Fisheries in the Government of Yemen, and later founded and served as president of Ibb University and served as

6

president of Sana'a University.  Plaintiff currently resides in Yemen with his wife, who is an American citizen, and their family.

18.     In 1991, Plaintiff's son Anwar Al-Aulaqi returned to the United States to attend college at Colorado State University.  Anwar Al-Aulaqi went on to obtain his master's degree at San Diego State University and later enrolled in a Ph.D. program at George Washington University, which he attended through December 2001.  He married and had three children while living in the United States.  He moved to the United Kingdom in 2003, and to Yemen in 2004.

19.     In January 2010, the Washington Post reported that Anwar Al-Aulaqi had been added to "a shortlist of U.S. citizens" that JSOC was specifically authorized to kill.  The same article reported that Anwar Al-Aulaqi had survived a JSOC-assisted strike in Yemen in late December 2009.  That strike reportedly killed 41 civilians, mostly children and women.  Another January 2010 news report stated that Anwar Al-Aulaqi was "all but certain" to be added to a list of suspects that the CIA was specifically authorized to kill.  In April 2010, the Washington Post and other media sources reported that Anwar Al-Aulaqi had been added to the CIA's list.

20.     Numerous news reports have corroborated that Defendants have authorized the targeted killing of Anwar Al-Aulaqi and are actively pursuing him.  According to one media report, he has already been the target of as many as a dozen unsuccessful strikes.  One U.S. official stated that "he's in everybody's sights."  In the context of a discussion about targeted killing, Defendant Panetta stated that Anwar Al-

Aulaqi is "someone that we're looking for" and that "there isn't any question that he's one of the individuals that we're focusing on."

21. Defendants added Anwar Al-Aulaqi to the CIA and JSOC kill lists after a closed executive process. In the course of that process, Defendants and other executive officials determined that Anwar Al-Aulaqi satisfied secret criteria that determine whether a U.S. citizen can be killed by his own government. Upon information and belief, Anwar Al-Aulaqi is now subject to a standing order that permits the CIA and JSOC to kill him. Upon information and belief, the authorization for Anwar Al-Aulaqi's killing by the CIA and JSOC involved the approval or recommendation of all Defendants.

22. Upon information and belief, individuals placed on the CIA and JSOC targeted killing lists remain on those lists for months at a time. An intelligence official who was questioned about the CIA's kill list stated that individuals would be removed from the kill list if their names "hadn't popped on the screen for over a year, or there was no intelligence linking [them] to known terrorists or plans."

23. Upon information and belief, Defendants have authorized the CIA and JSOC to kill Anwar Al-Aulaqi without regard to whether, at the time lethal force will be used, he presents a concrete, specific, and imminent threat to life, or whether there are reasonable means short of lethal force that could be used to address any such threat.

24. Executive officials have condemned Anwar Al-Aulaqi's public statements and sermons; they have also alleged that he has "cast his lot" with terrorist groups and taken on an "operational" role in a terrorist organization. The U.S. government has not, however, publicly indicted Anwar Al-Aulaqi for any terrorism-related crime.

25. In response to reports that the United States has placed Anwar Al-Aulaqi on kill lists, Yemeni officials, including the Prime Minister, the Foreign Minister, and the Director of the National Security Agency, have publicly stated that their government's security forces are taking measures to arrest Anwar Al-Aulaqi for possible charge and trial. Yemeni cabinet members have also publicly requested that the United States provide the Yemeni government with any evidence against Anwar Al-Aulaqi to support arresting him and bringing him to trial. The Yemeni government has prosecuted other residents of Yemen for terrorism-related crimes, and the Yemeni government is currently prosecuting at least one U.S. citizen who is alleged to be a member of a terrorist organization. Anwar Al-Aulaqi has in the past been detained by the Yemeni government and was imprisoned for 18 months in 2006 and 2007.

26. Anwar Al-Aulaqi has been in hiding in Yemen since at least January 2010. Plaintiff has had no communication with his son during that time. Anwar Al-Aulaqi cannot communicate with his father or counsel without endangering his own life.

## CAUSES OF ACTION

### First Claim for Relief
### Fourth Amendment: Right to be Free from Unreasonable Seizure

27. Defendants' policy of targeted killings violates the Fourth Amendment by authorizing, outside of armed conflict, the seizure, in the form of targeted killing, of U.S. citizens, including Plaintiff's son, in circumstances in which they do not present concrete, specific, and imminent threats to life or physical safety, and where there are means other than lethal force that could reasonably be employed to neutralize any such threat. Plaintiff brings this claim as next friend for his son.

9

**Second Claim for Relief**
**Fifth Amendment: Right Not to be Deprived of Life Without Due Process**

28.     Defendants' policy of targeted killings violates the Fifth Amendment by authorizing, outside of armed conflict, the killing of U.S. citizens, including Plaintiff's son, without due process of law in circumstances in which they do not present concrete, specific, and imminent threats to life or physical safety, and where there are means other than lethal force that could reasonably be employed to neutralize any such threat. Plaintiff brings this claim as next friend for his son.

**Third Claim for Relief**
**Alien Tort Statute: Extrajudicial Killing**

29.     Defendants' policy of targeted killings violates treaty and customary international law by authorizing, outside of armed conflict, the killing of individuals, including Plaintiff's son, without judicial process in circumstances in which they do not present concrete, specific, and imminent threats to life or physical safety, and where there are means other than lethal force that could reasonably be employed to neutralize any such threat. Plaintiff brings this claim in his own right to prevent the injury he would suffer if Defendants were to kill his son.

**Fourth Claim for Relief**
**Fifth Amendment: Due Process Notice Requirements**

30.     Defendants' policy of targeted killings outside of armed conflict violates the Fifth Amendment by authorizing the killing of U.S. citizens, including Plaintiff's son, on the basis of criteria that are secret. Plaintiff brings this claim as next friend for his son.

## PRAYER FOR RELIEF

For the foregoing reasons, Plaintiff Nasser Al-Aulaqi requests that the Court:

a. Declare that, outside of armed conflict, the Constitution prohibits Defendants from carrying out the targeted killing of U.S. citizens, including Plaintiff's son, except in circumstances in which they present concrete, specific, and imminent threats to life or physical safety, and there are no means other than lethal force that could reasonably be employed to neutralize the threats.

b. Declare that, outside of armed conflict, treaty and customary international law prohibit Defendants from carrying out the targeted killing of individuals, including Plaintiff's son, except in circumstances in which they present concrete, specific, and imminent threats to life or physical safety, and there are no means other than lethal force that could reasonably be employed to neutralize the threats.

c. Enjoin Defendants from intentionally killing U.S. citizen Anwar Al-Aulaqi unless he presents a concrete, specific, and imminent threat to life or physical safety, and there are no means other than lethal force that could reasonably be employed to neutralize the threat.

d. Order Defendants to disclose the criteria that are used in determining whether the government will carry out the targeted killing of a U.S. citizen.

e. Grant any other and further relief as is appropriate and necessary.

Respectfully submitted,

 /s/ Arthur B. Spitzer
Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union
of the Nation's Capital
1400 20th Street, N.W., Suite 119
Washington, DC 20036
Tel. 202-457-0800
Fax 202-452.1868
artspitzer@aol.com

Jameel Jaffer (to be admitted *pro hac vice*)
Ben Wizner (to be admitted *pro hac vice*)
Jonathan M. Manes
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 519-7814
jjaffer@aclu.org

Pardiss Kebriaei (to be admitted *pro hac vice*)
Maria C. LaHood (to be admitted *pro hac vice*)
William Quigley
Center for Constitutional Rights
666 Broadway, 7th floor
New York, NY 10012
(212) 614-6452
pkebriaei@ccrjustice.org

August 30, 2010