# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NASSER AL-AULAQI, on his own behalf and as next friend acting on behalf of ANWAR AL-AULAQI <br><br> Plaintiff, <br><br> v. <br><br> BARACK H. OBAMA, President of the United States, <br> ROBERT M. GATES, Secretary of Defense, <br> LEON E. PANETTA, Director, Central Intelligence Agency <br> (in their official capacities) <br><br> Defendants. | Civ. A. No. 10-cv-1469 (JDB) |

**UNCLASSIFIED DECLARATION IN SUPPORT OF
FORMAL CLAIM OF STATE SECRETS PRIVILEGE
BY JAMES R. CLAPPER, DIRECTOR OF NATIONAL INTELLIGENCE**

I, JAMES R. CLAPPER, hereby declare and state:

1. I am the Director of National Intelligence (DNI), and have served in this capacity since August 9, 2010. In my capacity as the DNI, I oversee the United States Intelligence Community and serve as the principal intelligence advisor to the President. Prior to serving as the DNI, I served as the Director of the Defense Intelligence Agency from 1992 to 1995, the Director of the National Geospatial-Intelligence Agency from 2001 to 2006, and the Under Secretary of Defense for Intelligence from 2007 to 2010, where I served as the principal

staff assistant and advisor to the Secretary and Deputy Secretary of Defense on intelligence, counterintelligence, and security matters for the Department of Defense. In my capacity as the Under Secretary of Defense for Intelligence, I simultaneously served as the Director of Defense Intelligence for the DNI.

2. Through the exercise of my official duties, I have been advised of this litigation and have reviewed the complaint filed by the plaintiff. I have also reviewed the public and the classified *in camera, ex parte* declarations of the Director of the Central Intelligence Agency (CIA), Leon E. Panetta (hereinafter "Panetta Declaration"). I make the following statements based upon my personal knowledge and on information made available to me in my official capacity.

I. Purpose of This Declaration

3. The purpose of this declaration is to formally assert the state secrets privilege as well as a statutory privilege under the National Security Act of 1947, 50 U.S.C. § 403-1(i)(1), in order to protect from disclosure intelligence information about al-Qaeda, al-Qaeda in the Arabian Peninsula (AQAP), and Anwar al-Aulaqi, as well as the sources and methods underlying that information that may be implicated by the allegations in the complaint or otherwise at risk of unauthorized disclosure in this case. Disclosure of the

information covered by these privilege claims reasonably could be expected to cause damage, up to and including exceptionally grave damage, to the national security of the United States.

4. I have also executed a classified declaration for the Court's *in camera, ex parte* review which further sets forth the privileged information and the bases for my privilege assertions.

## II. DNI Background and Statutory Authorities

5. Congress created the position of the Director of National Intelligence in the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, §§ 1011(a) and 1097, 118 Stat. 3638, 3643-63, 3698-99 (2004) (amending sections 102 through 104 of Title I of the National Security Act of 1947). Subject to the authority, direction, and control of the President, the DNI serves as the head of the United States Intelligence Community and as the principal advisor to the President and the National Security Council. 50 U.S.C. § 403(b)(1),(2).

6. The United States Intelligence Community includes the Office of the Director of National Intelligence; the Central Intelligence Agency; the National Security Agency; the Defense Intelligence Agency; the National Geospatial-Intelligence Agency; the National Reconnaissance Office; other offices within the Department of Defense for the collection of specialized

national intelligence through reconnaissance programs; the intelligence elements of the military services, the Federal Bureau of Investigation, the Department of the Treasury, the Department of Energy, the Drug Enforcement Administration, and the Coast Guard; the Bureau of Intelligence and Research of the Department of State; the elements of the Department of Homeland Security concerned with the analysis of intelligence information; and such other elements of any other department or agency as may be designated by the President, or jointly designated by the DNI and heads of the department or agency concerned, as an element of the Intelligence Community. *See* 50 U.S.C. § 401a(4).

7. The responsibilities and authorities of the DNI are set forth in the National Security Act of 1947, as amended, 50 U.S.C. § 403-1. Among other responsibilities, under the direction of the President, the DNI oversees coordination between elements of the intelligence community and the intelligence or security services of foreign governments or international organizations on all matters involving intelligence related to the national security or involving intelligence acquired through clandestine means. 50 U.S.C. § 403(k).

8. In addition, the National Security Act of 1947, as amended, states that "the Director of National Intelligence

shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 403-1(i)(1). By this language Congress expressed its determination that disclosure of intelligence sources and methods is potentially harmful and directed the DNI to protect them.

9. By virtue of my position as DNI, and unless otherwise directed by the President, I have access to all intelligence related to the national security that is collected by any department, agency, or other entity of the United States. 50 U.S.C. § 403-1(b).

10. As the DNI and pursuant to Executive Order 13526, as amended, I hold original classification authority up to the TOP SECRET level. This means that I have been authorized by the President to make original classification decisions.

### III. Plaintiff's Allegations

11. Plaintiff in this case, Nasser Al-Aulaqi, alleges that both the CIA and Department of Defense (DoD) are involved in authorizing, planning, and carrying out targeted killings, including of U.S. citizens, outside the context of armed conflict. Compl. ¶ 1, 13. Plaintiff further alleges that the United States has not explained on what basis individuals are allegedly added to "kill lists," or the circumstances in which this alleged claimed authority will be exercised. Compl. ¶ 16.

12.  Plaintiff further alleges that defendants have authorized the use of lethal force against his son, Anwar al-Aulaqi.  Compl. ¶ 19, 20.  Plaintiff claims that defendants added al-Aulaqi to lethal targeting lists maintained by the CIA and DoD after a closed executive process utilizing secret criteria that determine whether a U.S. citizen can be targeted for lethal action.  Compl. ¶ 21.  The plaintiff asks the Court to enjoin defendants from intentionally killing his son unless he presents a concrete, specific, and imminent threat to life or physical safety, and there are no means other than lethal force that could reasonably be employed to neutralize the threat.  Id., Prayer for Relief ¶ (c).  Plaintiff asks the Court to order defendants to disclose the alleged secret criteria used in determining whether to carry out the alleged lethal force at issue.  Id., Prayer for Relief ¶ (d).

IV.  **Public Information Related to Anwar Al-Aulaqi**

13.  Anwar Al-Aulaqi is a dual U.S.-Yemeni citizen and a leader of AQAP, a Yemen-based terrorist group that has claimed responsibility for numerous terrorist acts against Saudi, Korean, Yemeni, and U.S. targets since January 2009.  These include a March 2009 suicide bombing against South Korean tourists in Yemen, the August 2009 attempt to assassinate Saudi Prince Muhammad bin Nayif, the December 25, 2009 failed mid-air bombing of Northwest Airlines Flight 253 from Amsterdam to

Detroit, Michigan, and the April 26, 2010 attempted assassination of the United Kingdom's Ambassador to Yemen in Sanaa.

14. Anwar Al-Aulaqi has pledged an oath of loyalty to AQAP emir Nasir al-Wahishi, and is playing a key role in setting the strategic direction for AQAP. Al-Aulaqi has also recruited individuals to join AQAP, facilitated training at camps in Yemen in support of acts of terrorism, and helped focus AQAP's attention on planning attacks on U.S. interests.

15. Since late 2009, Al-Aulaqi has taken on an increasingly operational role in AQAP, including preparing Umar Farouk Adbulmutallab, who attempted to detonate an explosive device aboard a Northwest Airlines flight from Amsterdam to Detroit on Christmas Day 2009, for his operation. In November 2009, while in Yemen, Abdulmutallab swore allegiance to the emir of AQAP and shortly thereafter received instructions from al-Aulaqi to detonate an explosive device aboard a U.S. airplane over U.S. airspace.

16. On May 23, 2010, the official media arm of AQAP, al-Malahim Media Production, posted a 45-minute video of what is described as an interview with Anwar al-Aulaqi. In the video, the interviewee, whom the Intelligence Community assesses is Anwar al-Aulaqi, calls for jihad against America, praises the actions of Fort Hood shooter Major Nidal Hasan and Christmas Day

bomber Umar Farouk Adbulmutallab, and justifies the killing of U.S. civilians, including children. He also states that he is not a fugitive and declares he has no intention of turning himself in to America.

17. In a September 22, 2010 hearing before the Senate Homeland Security and Governmental Affairs Committee, Director of the National Counterterrorism Center Michael Leiter discussed the terrorist threat to the United States posed by al-Qaeda, AQAP, and U.S. citizens and residents inspired by al-Qaeda. Among other things, Director Leiter explained that Anwar al-Aulaqi's familiarity with the West and his role in AQAP are key concerns for the U.S. effort to combat terrorism at home and abroad.

## V.  Assertion of the State Secrets and Statutory Privilege

18. Despite the fact that some limited information related to al-Qaeda, AQAP and Anwar al-Aulaqi has been made public by the U.S. Government, Plaintiff's allegations in this case implicate other sensitive intelligence information that must be protected from disclosure. Therefore, I am asserting privilege over classified intelligence information, assessments, and analysis prepared, obtained, or under the control of any entity within the U.S. Intelligence Community concerning al-Qaeda, AQAP or Anwar al-Aulaqi that may be implicated by this lawsuit. This includes information that relates to the terrorist threat posed

by Anwar al-Aulaqi, including information related to whether this threat may be "concrete," "specific" or "imminent."

19. Specifically, I hereby assert the state secrets and DNI statutory privileges over information that falls within the following categories, the disclosure of which would result in damage, up to and including exceptionally grave damage, to the national security of the United States:

> A. (U) Intelligence information concerning al-Qaeda and the sources and methods for acquiring that information.
>
> B. (U) Intelligence information concerning AQAP and the sources and methods for acquiring that information.
>
> C. (U) Intelligence information concerning Anwar al-Aulaqi and the sources and methods for acquiring that information.

**VI. Harm of Disclosure**

20. I described in my classified declaration, submitted for *in camera, ex parte* review, the harms that would be associated with a disclosure of the information subject to this privilege assertion. In general, unclassified terms, the disclosure of intelligence information concerning al-Qaeda, AQAP, and Anwar al-Aulaqi would reveal to these terrorist organizations not only what information has been obtained by the Intelligence Community, but the sources and methods by which such intelligence was obtained. This, in turn, would provide terrorists with key insights for adjusting their

activities based on what information is already known to the U.S., and taking steps to protect information about future plots. Either result could cause exceptionally grave harm to national security by, for example, compromising existing investigations or eliminating the sources from which information on terrorist plots may be gathered. For these reasons, I assert privilege to protect intelligence information implicated by the allegations in this case concerning al-Qaeda, AQAP, and Anwar al-Aulaqi.

21. In connection with these privilege assertions, I have considered the extent to which more could be said on the public record to describe the information subject to my claim of privilege and the harms to national security that would result from disclosure of the privileged information. After careful consideration, I have determined that no further information regarding the privileged information or harms at stake could safely be disclosed on the public record without revealing the very information I seek to protect. Accordingly, a full description of the information protected and the bases for my privilege determinations are contained in my classified declaration, which is submitted for this Court's *in camera, ex parte* review. Should the court require additional information concerning my privilege claims, I respectfully request an opportunity to provide such additional

information prior to the entry of any ruling regarding my privilege claims.

## VII. Conclusion

22. For the reasons set forth above, I respectfully request that the Court uphold my assertion of the state secrets privilege and the DNI's statutory privilege assertion and exclude the privileged information from this case.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this 24th day of September, 2010.

     _____
     James R. Clapper
     Director of National Intelligence