# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NASSER AL-AULAQI, on his own behalf and as next friend acting on behalf of ANWAR AL-AULAQI, <br><br> Plaintiff, <br><br> v. <br><br> BARACK H. OBAMA, President of the United States; ROBERT M. GATES, Secretary of Defense; LEON E. PANETTA, Director of the Central Intelligence Agency, <br><br> Defendants. | Civ. A. No. 10-cv-1469 |

## PUBLIC DECLARATION AND ASSERTION OF MILITARY AND STATE SECRETS PRIVILEGE BY ROBERT M. GATES, SECRETARY OF DEFENSE

I, Robert M. Gates, do hereby state and declare as follows:

1. I am the Secretary of Defense and have served in this capacity since December 18, 2006. As such, I am the head of the Department of Defense ("DoD") and the principal assistant to the President in all matters relating to the Department of Defense. The Secretary of Defense has authority, direction, and control over DoD and all its components and activities. *See* 10 U.S.C. § 113(b). Prior to serving as the Secretary of Defense, I served as Director of Central Intelligence from 1991 to 1993, as Deputy

Director of Central Intelligence from 1986 until 1989, and as Assistant to the President and Deputy National Security Adviser from 1989 until 1991.

2. Through the exercise of my official duties, I have been advised of this litigation and have reviewed the complaint in this case. I make the following statements based upon my personal knowledge and on information made available to me in my official capacity.

3. The purpose of this declaration is to formally assert the military and state secrets privilege in order to protect highly sensitive information of DoD and U.S. armed forces implicated by the allegations in this case. As summarized in this public declaration and described further in my classified declaration submitted for the Court's *in camera, ex parte* review, public disclosure of the information covered by my privilege assertion reasonably could be expected to cause harm, up to and including exceptionally grave harm, to the national security of the United States.

4. As the Secretary of Defense, pursuant to Executive Order 13256, I hold original classification authority up to the TOP SECRET level. This means that I have been authorized by the President to make original classification decisions.

## I. ASSERTION OF THE STATE SECRETS PRIVILEGE

5. The allegations of this case put at issue sensitive intelligence information about al Qaida in the Arabian Peninsula ("AQAP"), disclosure of which would cause exceptionally grave harm to national security. The allegations of this case also put at issue sensitive military information concerning whether or not U.S. armed forces are engaged in particular operations in Yemen and the circumstances of any such operations.

2

Without confirming or denying any allegation in this case, information concerning whether or not U.S. armed forces are planning to undertake military actions in a foreign country, against particular targets, under what circumstances, for what reasons, and pursuant to what procedures or criteria, constitutes highly sensitive and classified military information that cannot be disclosed without causing serious harm to the national security of the United States. Accordingly, as set forth further below, I am asserting the military and state secrets privilege over information that falls within the following categories and that may be implicated by the allegations in this lawsuit:

    A.    Intelligence information DoD possesses concerning AQAP and Anwar al-Aulaqi, including intelligence concerning the threat AQAP or Anwar al-Aulaqi pose to national security, and the sources, methods, and analytic processes on which any such intelligence information is based;

    B.    Information concerning possible military operations in Yemen, if any, and including criteria or procedures DoD may utilize in connection with such military operations; and

    C.    Information concerning relations between the United States and the Government of Yemen, including with respect to security, military, or intelligence cooperation, and that government's counterterrorism efforts.

## II.    HARM OF DISCLOSURE OF THE PRIVILEGED INFORMATION.

6.    First, I am asserting privilege over intelligence information DoD possesses concerning AQAP and Anwar al-Aulaqi, including intelligence concerning the threat AQAP or Anwar al-Aulaqi pose to national security, and the sources, methods, and analytic processes on which any such intelligence information is based. The United States, in a July 16, 2010 press release issued by the Department of Treasury, has

publicly indicated that AQAP is a Yemen-based terrorist group that has claimed responsibility for numerous terrorist acts against United States and other targets, including targets in Yemen itself, and that Anwar al-Aulaqi is a key operational AQAP leader who assisted in preparations for the attempted bombing of Northwest Airlines Flight 253 as it was landing in Detroit on December 25, 2009. *See* Declaration of Ben Wizner, Exhibit T. The allegations in this case put at issue the nature and imminence of the threat posed by AQAP and Anwar al-Aulaqi. My privilege assertion extends to additional intelligence information that DoD may possess related to this threat, as well as to the sources and methods by which that intelligence information was collected. The disclosure of intelligence information concerning AQAP and Anwar al-Aulaqi that DoD possesses would reveal not only DoD's state of knowledge with respect to that group and Anwar al-Aulaqi, and the threat they pose, but would tend to reveal sources and methods by which such intelligence was obtained. For obvious reasons, DoD cannot reveal to a foreign terrorist organization or its leaders what it knows about their activities and how it obtained that information. Such disclosures could not only allow foreign terrorist organizations to adjust their plans based on the state of U.S. knowledge, but alter their communications and activities and thereby shield information that could prove critical to assessing the threat they pose to the United States and other nations. I concur with Director of National Intelligence Clapper's assessment that the disclosure of intelligence information related to AQAP and Anwar al-Aulaqi would cause exceptionally grave harm to national security.

7.  Second, I am asserting privilege over any information concerning possible military operations in Yemen and any criteria or procedures DoD may utilize in connection with such military operations. The disclosure of any operational information concerning actions U.S. armed forces have or may plan to take against a terrorist organization overseas would risk serious harm to national security and foreign relations. Official confirmation or denial of any operations could tend to reveal information concerning operational capabilities that could be used by adversaries to evade or counter any future strikes. The disclosure of such operations would allow such targets to act accordingly, including by altering their behavior to evade military action and continue to plot attacks against the United States. In addition, the disclosure of any criteria or procedures that may be utilized by DoD in planning or undertaking military action overseas would plainly compromise the United States' capability to take such action not only in a particular case but in future cases by providing terrorist adversaries with insights into military planning. Finally, as discussed below, public confirmation or denial of either prior or planned operations could seriously harm U.S. foreign relations.

8.  Third, I am asserting privilege over information concerning relations between DoD and the Government of Yemen, including on security, military or intelligence cooperation, and that government's counterterrorism efforts. The disclosure of information concerning cooperation between the United States and a foreign state, and specifically regarding any possible military operations in that foreign country, could lead to serious harm to national security, including by disrupting any confidential relations with a foreign government.

## III. CONCLUSION

9. In sum, as the Secretary of Defense, I formally assert the military and state secrets privilege in order to protect our nation's security from damage, up to and including exceptionally grave damage. In connection with this assertion of the military and state secrets privilege, I have considered the extent to which the bases for my assertion could be filed on the public record. I have determined that no further information concerning these matters beyond what is in this unclassified declaration can be disclosed on the public record without revealing the very classified information I seek to protect. As noted, my separate classified declaration provides a more detailed explanation of the information and harms to national security. Should the Court require additional information concerning my claims of privilege, I respectfully request an opportunity to provide that information prior to the Court's ruling on my privilege assertion.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 23rd day of September 2010.

_____
Robert M. Gates
Secretary of Defense